**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RICHARD SHAFFER | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-03-2138 |
| | * | |
| ACS GOVERNMENT SERVICES, INC., | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

On July 25, 2003, Richard Shaffer ("Shaffer" or "Plaintiff") filed this action against ACS Government Services, Inc. ("ACS" or "Defendant") alleging wrongful discharge in violation of the Jury Systems Improvement Act ("JSIA"). *See* 28 U.S.C. § 1875(a). Since that time, there has been very few things about which the parties to this lawsuit agree. Interestingly, the parties readily admit the "difficult" truth that "life is not fair." Fortunately for them, and for American jurisprudence, the "ultimate goal of [this Court is] promoting the *fair* administration of justice . . . ." *Ficker v. Curran*, 950 F. Supp. 123, 124 (D. Md. 1996) (emphasis added).

Currently pending before the Court is Defendant's Motion for Summary Judgment [105], Plaintiff's Motion *in limine* to Exclude Testimony [101], and Plaintiff's Motion *in limine* to Sanction Defendant [102]. The motions have been fully briefed, and the Court has reviewed the entire record. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth more fully below, the Court will DENY, *in part*, GRANT, *in part*, Defendant's Motion for Summary Judgment [105], DENY Plaintiff's Motion to Exclude Testimony [101], and GRANT, *in part*, DENY, *in part*, Plaintiff's Motion to Sanction Defendant [102].

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 10, 2001, ACS hired Shaffer as Director of Business Development.  At ACS, a Business Development Director is responsible for identifying opportunities, qualifying opportunities, and ensuring the company has a robust and vibrant stream of business growth.  To satisfy this responsibility, the Director is expected to not only maintain and expand current contracts, but also to attract and develop new business relationships.  At the time of hiring, Shaffer was to report to Marty Stein.  In October 2002, Frank Burke became Shaffer's direct supervisor.

On March 11, 2002, Shaffer received a summons for grand jury service in the United States District Court for the District of Columbia.  The summons indicated that if Shaffer was selected for duty, he would have to serve two days a week over the course of eighteen months.  On April 26, 2002, Shaffer was selected as an alternate juror.  The court accommodated Shaffer's personal and work demands, and did not require his attendance for several months.  However, in early November 2002, the jury office advised Shaffer that he would be summoned for service two days a week beginning on November 20, 2002.

According to ACS, Marty Stein and Frank Burke met in the summer of 2002 to discuss Shaffer's job performance.  Apparently, Stein was disappointed with Shaffer's lack of a more strategic approach to business development.  Burke then advised Stein to monitor Shaffer's performance more closely.  Shaffer, on the other hand, never received notice of unsatisfactory performance.  He continued to work at ACS and serve jury duty two days a week until January 30, 2003.  On that day, Frank Burke informed Shaffer that his employment was being terminated effective immediately.  Burke's stated reason for the termination was Shaffer's poor performance.

The very next day, Shaffer informed Chief Judge Hogan of the United States District Court for the District of Columbia that he had been terminated by ACS.  In light of the fact that Shaffer was serving grand jury duty, Judge Hogan wrote to ACS inquiring of the reasons for Shaffer's

termination.   ACS responded with a letter enumerating seven reasons for Shaffer's termination. Shaffer then instituted this action on July 25, 2003 alleging violation of 28 U.S.C. § 1875(a) and wrongful discharge in violation of Maryland public policy.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).   In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists.  *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

I.  Summary Judgment

*A. Plaintiff's Jury Systems Improvement Act Claim*

The Jury Systems Improvement Act ("JSIA") prohibits any employer from discharging an employee because of service on a federal grand or petite jury.  28 U.S.C. § 1875(a). Specifically, the Act provides that:

> [n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court in the United States.

*Id.* In essence, the statute provides a remedy for employees against retaliatory discharges. The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to apply in retaliatory cases. "Under that analysis, the plaintiff must show that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores*, 144 F.3d 294, 301 (4th Cir. 1998) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). This Court has explicitly followed this three-part analysis. *See Glunt v. GES Exposition Servs.*, 123 F. Supp. 2d 847, 871 (D. Md. 2000).

It is clear from the facts that Plaintiff was serving jury duty at the time of his discharge. Consequently, the parties do not dispute that Plaintiff was engaged in a protected activity or that Defendant took an adverse action against him. The issue is whether Plaintiff's termination was causally connected to his jury service. Defendant posits that ACS harbored no animus with respect to Plaintiff taking leave for jury service. In fact, Defendant contends that it was liberally flexible with the company's policy in order to encourage Plaintiff to fulfill his civic duties. On the contrary, Plaintiff alleges that Defendant's posture with respect to his jury service was one of hostility. Further, Plaintiff asserts that the close temporal proximity between his jury service and his discharge from Defendant's employ is sufficient evidence to survive summary judgment on this issue.

Although Defendant makes a compelling argument for summary judgment supported by the fact that Plaintiff's discharge was more than ten months after Plaintiff received the grand jury summons and that Plaintiff had failed to bring in new business, the Court is ultimately not persuaded. On this motion for summary judgment, the Court must take the facts, and all reasonable

inferences therefrom, in the light most favorable to Plaintiff.   As such, the Court will accept

Plaintiff's assertions that ACS officials acted with hostility toward Plaintiff's jury service.

Furthermore, several courts have addressed the temporal argument offered by Plaintiff and this

Court finds the reasoning of these courts persuasive.

In *Brungart v. Bellsouth*, 231 F.3d 791 (11th Cir. 2000), the plaintiff brought an action

against her former employee alleging that the defendant wrongfully retaliated against her in violation

of 29 U.S.C. § 2601 *et seq.*, the Family Medical Leave Act ("FMLA"). *Brungart*, 231 F.3d at 793.

On a motion for summary judgment, the district court applied the same three-part test to establish

a prima facie case of retaliatory discharge.  The parties did not dispute the first two elements, but

disagreed about whether there was a causal connection.  Although the plaintiff argued that she was

fired the day before she was scheduled to begin her medical leave, the district court granted

summary judgment, concluding that the plaintiff "failed to create a genuine issue of fact about

causation."  *Id.* at 798-99.

On appeal, the United States Court of Appeals for the Eleventh Circuit explained that in

order "to establish the causal connection element, a plaintiff need only show that the protected

activity and the adverse action were not wholly unrelated."  *Id.* at 799 (internal citations omitted).

Further, the court reasoned that "close temporal proximity between the employee's protected

conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine

issue of material fact of a causal connection."  *Id.*  Other courts have adopted similar reasoning.  *See*

*McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997) (reasoning that a "close

temporal connection between the two events is generally enough to satisfy the third element of the

prima facie test"); *Carte*r *v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (finding that temporal proximity

established prima facie case in retaliatory discrimination claim); *Williams v. Cerberonics, Inc.*, 871

F.2d 452, 457 (4th Cir. 1989) (finding a causal connection where plaintiff was fired four months after engaging in protected activity); *Dollar v. Shoney's, Inc.*, 981 F. Supp. 1417, 1420 (N.D. Ala. 1997) (stating that evidence of temporal proximity is sufficient to establish causal connectivity).

In the case *sub judice*, there can be no real dispute about the close temporal proximity of Shaffer's jury service and the termination of his employment.  In *Williams*, the Fourth Circuit found that a four-month gap between the protected activity and the adverse employment decision was sufficient to establish a causal connection.  *See Williams*, 871 F.2d at 457.  Here, more than ten months elapsed between the time Plaintiff learned of his grand jury service and the eventual termination of his employment at ACS.  However, there are no gaps in time between the protected activity and the adverse employment.  The two events occurred simultaneously because at the time of his discharge, Plaintiff was still serving grand jury duty.  Taken the facts in the light most favorable to the Plaintiff, as this Court must on a motion for summary judgment, Plaintiff has come forth with sufficient evidence to establish the final element of the prima facie case.

However, in an action for retaliatory discharge, the plaintiff cannot survive summary judgment simply by establishing the prima facie case.  In a circumstantial case such as the one at bar, the court applies the familiar *McDonnell Douglas* burden shifting analysis.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* test, once the plaintiff has established the prima facie case, the burden shifts to the defendant to articulate a lawful, non-retaliatory reason for the adverse employment decision.  *See Williams*, 871 F.2d at 457.  If the defendant comes forth with a legitimate business reason, then the burden shifts back on the plaintiff to establish that the proffered explanation is pretextual.  *Id.*

Here, ACS asserts that Shaffer's poor job performance was the reason for his termination. In his deposition, Plaintiff admits that on January 30, 2003 when Frank Burke called Plaintiff into

his office to formally discharge him, Burke told him that "its not working out . . . it's your performance." *Shaffer Dep.* at 132:15-22.  Plaintiff had failed to close new business and had missed several opportunities.  According to Charles Kelly, the then-Vice President of Human Resources at ACS, Shaffer "was not terminated for going to jury duty, he was terminated for his job performance or lack thereof." *Kelly Dep.* at 38:1-3.  In the absence of an employment contract, an employment relationship is at-will.  This means that the relationship can be terminated at any time and for any reason by either the employer or employee.  The only limitation on this general rule is that the reason cannot be an illegal reason.  If ACS honestly believed that Shaffer's job performance was unsatisfactory, then it was within ACS's prerogative to terminate him for that reason.  Making employment decisions, even the decision to terminate someone's employment, based on employee performance, is certainly a legitimate and legal reason.  Although Plaintiff may disagree with Defendant's opinion of his job performance or the wisdom of the decision to discharge him, such disagreement does not make the decision illegal or retaliatory.  The Court will not pass judgment on the wisdom or fairness of an employer's legitimate business decisions.  *See Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 281 (4th Cir. 2000).  Therefore, Defendant has met it's burden under the *McDonnell Douglas* test by articulating a legitimate reason for Plaintiff's discharge.

To survive summary judgment, Plaintiff must rebut Defendant's proffered reason by offering evidence that Defendant's stated reason is pretextual.  In order to meet this burden, Plaintiff must persuade the Court that an illegal reason "more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996).  Plaintiff has not brought forth sufficient evidence to persuade the Court that his jury service more than likely motived Defendant to terminate his employment.  At best, Shaffer has only

presented evidence that ACS was incorrect in its assessment of his job performance.  In support of

his argument that ACS's reason for the termination is pretextual, Shaffer offers the affidavits of two

former ACS employees, neither of which had first-hand knowledge of or participated in the decision

to terminate Shaffer.   Simply arguing that these employees were satisfied with Shaffer's

performance does not sufficiently establish that ACS's stated reason was not the "real" reason for

Shaffer's discharge.

More troubling, though, and fatal for ACS on a motion for summary judgment, is the second

prong of the *Burdine* inquiry–whether the employer's explanation is "unworthy of credence."  The

substantive analysis of this issue centers around the December 9, 2005 ruling of Judge Charles Day,

United States Magistrate Judge.  *See Dkt. Doc. No. 103.*  Plaintiff had moved the court to sanction

Defendant for violating two court orders—a preservation order entered by this Court on October 21,

2003 (*Dkt. Doc. No. 11*) and a sanctions order entered by the magistrate court on March 2, 2005

(*Dkt. Doc. No. 40*).  In support of his motion, Plaintiff offered evidence that Defendant failed to

abide by a litigation hold which should have been in place once ACS received the letter from Chief

Judge Hogan inquiring about ACS's reasons for terminating Shaffer.  Most relevant to the instant

motion, and for Defendant most damaging, is the deposition testimony of Marty Stein–Shaffer's

former supervisor.  The relevant testimony concerns a three-page document labeled by Defendant

as Stein's "Notes to Frank Burke" regarding Plaintiff's termination.  *See Kelly Dep. Ex. 3.*  The

document purports to contain the reasons for the decision to terminate Shaffer's employment.

However, in his deposition testimony, Stein reveals some troubling facts about this very

crucial piece of evidence.  When asked about the three-page document, Stein responded:

> **A:** That's correct.  All I am saying is that Page 3 of 3, although I sent this to
> somebody, is not what I created.  It's different than what I created.
> **Q:** How is it different?
> **A:** The first paragraph is different than what I created.  I would never refer to myself

> as Stein had several discussions.  And then there are two pieces that are missing from the bottom, kind of an ending sentence, my name, and the date this was prepared.  They aren't here.  I gave the content—fundamental content to someone and then someone, for whatever reasons, created this document which I had a copy of and I gave to our attorney, but I didn't create this piece of paper.

*Stein Dep.* 46:11–47:5.  Under Judge Day's December 9, 2005 ruling, the February 6, 2003 letter from Chief Judge Hogan should have given Defendant sufficient notice to institute a litigation hold on all evidence relevant to this case.  Since the "Notes to Frank Burke" were created to assist Charles Kelly in responding to Judge Hogan's letter, all drafts of that document should have been preserved.  Because the three-page document embodies ACS's reasons for terminating Shaffer's employment, any prior versions of the document are certainly relevant to the issue of ACS's motivation for making the decision.  Stein's testimony reveals that prior versions of this document did in fact exist.  Because Defendant is unable to produce any of these prior versions, the believability of the current version of the document and ACS's stated reason for the discharge can reasonably be questioned.  Taken the facts in the light most favorable to Plaintiff, and all reasonable inferences therefrom, including the adverse inference that the prior versions were beneficial to Plaintiff and detrimental to Defendant, the only conclusion this Court can reach is that Plaintiff has brought forth sufficient evidence that Defendant's stated reason is "unworthy of credence."  Therefore, Defendant cannot prevail on its motion for summary judgment with respect to the JSIA claim.

*B. Plaintiff's State Law Claim*

In addition to his claim under the Jury Systems Improvement Act, Plaintiff also brought a claim for wrongful discharge in violation of Maryland public policy.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 8-105 (2006).  The parties disagree as to the application of this provision to the facts of Plaintiff's case.  Plaintiff's argument that terminating an employee for serving on a federal grand

jury is against Maryland public policy, while possibly true, will not survive Defendant's summary judgment attack. Maryland is an employment at-will state. *See King v. Marriott Int'l Inc.*, 866 A.2d 895, 901 (Md. Ct. Spec. App. 2005). Maryland courts provide an exception to this general rule for otherwise unremedied violations of public policy. *Id.* However, where a statute provides a remedy to redress the employee's injury, the public policy exception to the employment at-will doctrine is not available to the employee. *Id.* at 904. Here, Plaintiff's claim is focused solely around his service on the federal grand jury. Congress has specifically provided a remedy for employees who suffer adverse employment actions by reason of their jury service through the Jury Systems Improvement Act. Therefore, the Court agrees with Defendant that "[t]here is no void that the Court needs to fill by creating a new remedy." Because Plaintiff has a remedy under the JSIA, Defendant's motion for summary judgment as to the state law claim will be granted.

Therefore the Court will GRANT *in part* and DENY *in part* Defendant's motion for summary judgment.

II.  Plaintiff's Motion to Sanction Defendant

Plaintiff has moved the Court to Sanction Defendant for violating this Court's October 21, 2003 preservation order. Insofar as Judge Day has already sanctioned Defendant for violating the previous orders of this Court and the magistrate court, the Court declines to further sanction Defendant. Therefore, Plaintiff's request for further sanctions will be denied. In the opinion of the Court, however, an adverse inference with respect to Defendant's inability to produce relevant documents that should have been preserved is warranted in this case. Consequently, the Court will grant Plaintiff an adverse inference instruction at the appropriate time. The Court will not accept Plaintiff's proposed instruction at this time.

III.  Plaintiff's Motion to Exclude Testimony

Plaintiff has also moved the Court to exclude any testimony of ACS employees that is inconsistent with the testimony of Charles Kelly, ACS's Rule 30(b)(6) designee.  Plaintiff argues that Defendant's Rule 36(b)(6) designee was unprepared and could not effectively answer many of Plaintiff's questions.  Further, Plaintiff asserts that Defendant is attempting to supplement Kelly's testimony with the "helpful" testimony of Burke, Stein and Fleming, but not the hurtful testimony. It appears to the Court, however, that Plaintiff wishes to use Kelly's 30(b)(6) designation as both a sword and shield.  In support of its opposition to Defendant's summary judgment motion, Plaintiff readily uses testimony from Burke and Stein.  It flies in the face of fairness to allow Plaintiff to escape certain parts of testimony that may be damaging while using other parts of the same testimony to bolster his claim.  To the extent that both parties have had time to deal with this issue in discovery, the Court will not now referee what has become a battle of witness credibility. Therefore, Plaintiff's motion to exclude testimony will be denied.

## CONCLUSION

For the reasons stated above, the Court will DENY, *in part*, GRANT, *in part*, Defendant's Motion for Summary Judgment [105], DENY Plaintiff's Motion to Exclude Testimony [101], and GRANT, *in part*, DENY, *in part*, Plaintiff's Motion to Sanction Defendant [102]. An Order consistent with this opinion will follow.

September 20, 2006
     Date

/s/
Alexander Williams, Jr.
United States District Judge